## ANIMARIUM CO. v. FILLOON et al.

(Circuit Court, S. D. Iowa, C. D.    June 21, 1900.)

PATENTS—VALIDITY—THE OXYDONOR.

The Sanche patent, No. 587,237, for a device known as the "Oxydonor," an appliance for use in treatment for disease, considered, and, on evidence showing that in actual use the device had proved operative and useful, *held* valid, as against defendants, who were shown to be manufacturing and selling an infringing device of similar nature.

In Equity.    Suit for infringement of a patent and trade-marks.    On rehearing.    For former opinion, see 98 Fed. 103.

SHIRAS, District Judge.    This case was originally before the court at the November term, 1899, at which time G. Walter Filloon was the sole defendant, and, upon the hearing then had, it was held that the instrument known as the "Oxygenor" was in fact an imitation of the "Oxydonor," a device manufactured by the complainant company under letters patent No. 587,237, dated July 27, 1897, and that, in his efforts to supplant the Oxydonor by introducing the Oxygenor to his customers, the defendant Filloon pirated the trade-marks of the complainant, used in connection with the Oxydonor; but the injunction sought by the complainant was refused because it was not shown to the satisfaction of the court that the device known as the "Oxydonor" was in fact valuable or useful, in such sense as to sustain the validity of letters patent No. 587,237; it being further held that, as there were then pending in other jurisdictions suits involving the validity of the patent, the injunction would be refused, with leave to complainant to apply for a rehearing in case the validity of the patent and the usefulness of the Oxydonor should be established by decree in the other pending cases.    See opinion in 98 Fed. 103.    Subsequently, it was agreed by the parties interested in the Oxydonor and Oxygenor Companies that the questions at issue should be fully presented in the present case, and to that end a rehearing was consented to, and James Mahler, Myrtle G. Mahler, and Chattie E. Field, composing the partnership doing business under the name of the Oxygenor Company, were made co-defendants in the suit, and answered the bill of complaint, and the record was reopened for taking further evidence, upon the completion of which the case was submitted to the court after a full and elaborate argument of counsel.    The additional evidence adduced in the case does not shift the pivotal point upon which the decision must be rested, for it is clear that if letters patent No. 587,237 are valid, and the device covered thereby is useful, then the complainant is entitled to the injunction prayed for, to restrain the defendants from manufacturing and selling the instrument known as the "Oxygenor," or from using the trade-marks associated with the sale of the Oxydonor.    Upon the issue of the usefulness of the device, the defendants claim that the Oxydonor is wholly inert; that it does not set in operation any natural force; that the so-called principle of diaduction, claimed to have been discovered by Dr. Sanche, the patentee, and to be utilized through the Oxydonor, does not exist; and that the beneficial results derived from the use of the Oxydonor must be attributed

to its influence upon the imagination of the patients. I must confess that the additional evidence taken in the case has not given to the court any better understanding of the so-called principle of diaduction than was had at the former hearing. I am entirely certain that I do not understand the working of this so-called force, if any such exists, and I greatly doubt whether Dr. Sanche has any clear conception of the force or principle which he seeks to describe under the name of "diaduction." But, though this be true, it does not follow that the patent covering the device in question is invalid because the inventor may not understand the principle upon which it operates. A patent cannot be granted to one who may have discovered a hitherto unknown mode of operation of the forces of nature, or have discovered the law governing the operation of a natural force, for in such cases nothing new is invented, but only a discovery is made of a pre-existing matter. If, however, a person invents an instrument or device whereby a natural force may be utilized with beneficial results, the instrument so devised may be patented, and the fact that the inventor may misconceive the nature and mode of operation of the force called into action through his patented device will not invalidate the patent. The usefulness of the patented article is to be determined by the practical results derived from its use, and not from a consideration of the theories existing in the mind of the inventor as to the nature of the force brought into action by the use of the patented device. Upon the issue of the beneficial results following the use of the Oxydonor, the complainant has introduced the testimony of some 70 witnesses, residing in many different parts of the country, who have used the device, and their testimony is to the effect that they derived beneficial results from its use. As was stated in the original opinion filed herein, the evidence of the defendant Filloon showed that many thousands of these instruments had been sold in Iowa and adjacent states, and thus full opportunity was given to the defendants to prove the actual results flowing from the use of the device, and, if possible, to show that, when put to actual use, it was inert and inoperative. This field of investigation was not entered into by the defendants, who have largely depended for evidence, in support of their claim that the Oxydonor is worthless as a curative agency, upon the views and theories of persons who have not given the device any thorough, practical test. Upon this question of the actual beneficial results produced by the use of the Oxydonor, the weight of the evidence must be held to be with complainant, and the situation of the case is this: The evidence shows that the complainant, as assignee of Dr. Sanche, is the owner of letters patent No. 587,237, which were not issued until after a prolonged contest before the patent office, and which must be held, therefore, to represent the well-considered judgment of that office, and to create a strong prima facie case in favor of the validity of the patent, which can only be overcome by evidence of a clear and convincing nature. Rob. Pat. § 1016. The evidence further shows that a very large number of the instruments described in the letters patent have been sold throughout the country, and have been used by all classes of people; and the complainant has introduced in evidence the testimony of some 70 of the persons so using the invention, and their testimony shows

that the device has operated beneficially when used by them, and this class of evidence has not been met by the defendants; so that it must be held that the evidence proves that, in actual use, the Oxydonor has shown itself to be operative and useful. The evidence further shows that the defendants are earnestly striving to defeat the patent held by complainant in order that they may be free to sell to the public an instrument or device of like nature to that manufactured by complainant,—a course of conduct on their part which is wholly incompatible with the theory of the uselessness of the Oxydonor, unless they admit that they are willing to incur a great expense in defeating complainant's patent, to the end that they may also engage in a fraud upon the public by selling an instrument of like nature and appearance. If we absolve the defendants from the imputation of willingness to participate in a fraud upon the public, we must then conclude that they recognize a merit in devices of the nature of the Oxydonor and Oxygenor. Under these circumstances, the court cannot find that the evidence clearly shows that the patented device is wholly without utility, and is not, therefore, justified in refusing the injunction prayed for against the defendants on the ground that the letters patent are void, because they cover a worthless device.

Thus, in Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939, it is said:

"The patent is prima facie evidence of both novelty and utility, and neither of these presumptions has been rebutted by the evidence. On the contrary, they are strengthened. * * * The fact that it has been infringed by defendants is sufficient to establish its utility, at least as against them."

In Kearney v. Railroad Co. (C. C.) 32 Fed. 320, it was aptly said by Mr. Justice Bradley:

"The first question which presents itself when such a defense is made is, then why did you use it? This mode of attacking a patent can never succeed without showing by the clearest evidence that the invention is utterly frivolous and worthless; and the fact that the defendants have used it, and infringed the patent, is always a strong argumentum ad hominem against them."

It is upon the principle laid down in these and similar cases that the court relies for the conclusion it has reached upon the issues submitted. The question whether the continued use of the devices patented by Dr. Sanche will demonstrate their value is, in the mind of the court, a matter of grave doubt; but, because the attitude of the court upon this question is that of a "doubting Thomas," it is not justified in holding the patent to be void. The complainant is therefore entitled to a decree and an injunction as prayed for against the defendants composing the Oxygenor Company, and also against the defendant Filloon, restraining him from selling the infringing devices, and from using the trade-marks representing the complainant's instruments.