NATIONAL ELECTRIC SIGNALING CO. et al. v. TELEFUNKEN WIRE-
LESS TELEGRAPH CO. OF UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 9, 1915.)

No. 100.

1. PATENTS ⬉297—SUITS FOR INFRINGEMENT—PRIOR ADJUDICATION.
In patent cases, a decision of a court of co-ordinate jurisdiction, while
not controlling, should be followed, unless the court in the second case is
strongly persuaded that it is erroneous.
[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 481–488; Dec.
Dig. ⬉297.]

2. PATENTS ⬉328—VALIDITY AND INFRINGEMENT—APPARATUS FOR WIRELESS
TELEGRAPHY.
The Fessenden patent, No. 706,736, for improvements in apparatus for
wireless telegraphy, if conceded validity, *held* not infringed.

3. WORDS AND PHRASES—"ANTENNA"—"RECEIVER"—"DETECTOR"—"COHERER"
—"WAVE RESPONSIVE DEVICE"—"HERTIAN WAVES."
In wireless telegraphy, the wire in the air on the tall mast is called
the "antenna." The instrument which responds to the waves striking
the receiving antenna is called the "receiver." The "detector" or "co-
herer" and "wave responsive device" is a device by which the electromag-
netic waves cause the indicator to respond. "Hertian waves" are electric
oscillations discovered by Hertz.

Appeal from the District Court of the United States for the South-
ern District of New York.

On appeal from a decree of the District Court of the United States
for the Southern District of New York dismissing the bill for the
infringement of claims Nos. 1, 4, 22, 32 and 34 of letters patent No.
706,736 granted to Reginald A. Fessenden August 12, 1902, for im-
provements in apparatus for wireless telegraphy.

The patent was considered by the Circuit Court of Appeals of the First
Circuit and the claims were so limited that the defendant was held not to
infringe. United Wireless Telegraph Co. v. National Electric Signaling Co.,
198 Fed. 386, 117 C. C. A. 262. Claim 32 seems to be the only claim involved
in the present case which was directly passed upon in the case in the First
Circuit. It is asserted in the brief for the appellee that claim 32 is not prop-
erly before this court and was not litigated in the District Court because "the
order for trial" of December 6, 1912, expressly limited the issues to 14 claims,
32 not being among them. The order is referred to at page 36 of the record,
but we have been unable to find a copy of it in the record. The opinion of
the District Judge in that case is found in National Electric Signaling Co. v.
United Wireless Telegraph Co. (C. C.) 189 Fed. 727. A motion for rehearing
was denied by the Circuit Court of Appeals. United Wireless Telegraph Co.
v. National Electric Signaling Co., 199 Fed. 153, 117 C. C. A. 275. The opinion
of the District Judge in the case at bar is reported in 209 Fed. 856. Judge
Veeder's opinion in Marconi Co. v. National Electric Co. is reported 213
Fed. 815.

Herbert G. Ogden, of New York City (Frederick W. Winter, of
Pittsburgh, Pa., and Melville Church, of Washington, D. C., of coun-
sel), for appellants.

Hector T. Fenton, of Philadelphia, Pa., for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The Fessenden patent in suit was applied. for May 17, 1900. The application was renewed November 29, 1901,. and the patent issued August 12, 1902. It is for new and useful improvements in apparatus for wireless telegraphy and relates to certain improvements in apparatus for the electrical transmission of signals from one station to another without the use of connecting conductors. The specification points out that in prior methods the electromagnetic waves generated at the receiving station produce voltages in the receiving current. These voltages being impressed upon a suitable material normally nonconductive render the same conductive, permitting the passage of a current through a circuit in which the said material is included. The specification states further that:

"After the passage of the voltages produced by each series of electromagnetic waves generated at the sending-station the coherer must be operated in some way to restore it to normal or nonconductive condition."

The object of the invention—

"is to provide for the generation by currents produced by electromagnetic waves of induced currents in a second element or circuit and by the reaction of the current in the second element or circuit on the field formed or produced by the currents in the receiving-conductor to produce motion which is directly observable."

The specification states further:

"In general terms the invention consists in apparatus whereby the energy of electric currents produced by electromagnetic waves may be transformed into the energy of motion and the energy of such motion employed for producing intelligible signals."

The apparatus employed at the sending station may be similar to that used for the generation of electromagnetic waves. It consists of an induction-coil having its primary coil in circuit with a generator, the circuit having a make-and-break mechanism included therein. One of the discharging knobs or terminals is connected with the radiating portion of the sending conductor while the other knob or terminal is grounded. It is not entirely clear which of the claims are involved. Apparently all of the so-called "tuning" claims and Nos. 15, 23 and 30 of the "detector" claims have been abandoned and the complainants now rely upon claims 1, 4, 22, 32 and 34. The defendant objects to the inclusion of claim 32 which, it asserts, was not in issue in the District Court and was adjudged adversely to the complainant's present contention by the Circuit Court of Appeals of the First Circuit. We understand that the claims now relied on by the complainant are as follows:

"1. In a plant for the transmission of signals by electromagnetic waves, the combination of means located at the sending-station for the generation of electromagnetic waves, a receiving-conductor at the other station, means for directly translating the energy of the currents produced in the receiving-conductor by the electromagnetic waves into energy of motion and means for observing or recording such motion, substantially as set forth."

"4. In a plant for the electrical transmission of signals without the use of wires, the combination of means for the generation of electromagnetic waves, said means including a capacity of relatively large radiating-surface, and means for directly translating the energy of the currents produced in a re-

ceiving-conductor by electromagnetic waves into the energy of motion, substantially as set forth."

"22. In a plant for the transmission of electrical energy without the use of wires, the combination of means located at the sending-station for the generation of electromagnetic waves, a receiving-conductor at the other station, and means having a low resistance for directly translating the energy of the currents produced in the receiving-conductor by the electromagnetic waves into the energy of motion, substantially as set forth."

"32. A system of signaling by electromotive waves having at the receiving-station a current-operated, self-restoring, constantly receptive wave-responsive device."

"34. A system of signaling by electromotive waves, having in combination a current-operated, constantly-receptive wave-responsive device, at the receiving-station and a source of persistent radiation at the sending-station."

[3] It is unfortunate that a patent dealing with a technical and esoteric art which is, comparatively, in its infancy and in which phenomena are constantly appearing for which even the most learned are unable to account, should be construed by a tribunal composed wholly of lawyers who have little practical experience and expert knowledge regarding the subject-matter of the patent. We have received much practical assistance from the opinions delivered in the First Circuit. Judge Hale has made many terms of art plain which would otherwise convey little information to the uninitiated. 189 Fed. 727. For instance, the wire in the air on a tall mast is called an "antenna"; the instrument which responds to the waves striking the receiving antenna is called the "receiver." The "detector"—also called the "coherer" and "wave responsive device" is a device by which the electromagnetic waves cause the "indicator" to respond. "Hertian waves" are electric oscillations discovered by Heinrich Hertz. Without these and similar definitions many of the statements of the patent would be as cryptic to the uninitiated as the hieroglyphics on an Egytian tomb. The patent and the prior art have been so thoroughly exploited by the two opinions in the First Circuit, and the opinion of Judge Learned Hand in the District Court, that we do not think it necessary to attempt to restate what is there so clearly stated.

As to all of the claims now in issue Judge Hale dismissed the bill except as to claim No. 32. The Circuit Court of Appeals dismissed the bill as to all the claims. Judge Hand would, we think, have been fully justified in following the decision of the Circuit Court of Appeals for the First Circuit but instead of doing so he made an independent analysis of the questions involved and reached the same conclusion, summing up the situation as follows:

"The suit appears to me to be an effort, natural and sincere enough, to raise what was a simple, and not very useful contrivance into a great pioneer patent."

[1] Comity, though it does not compel us to follow the decision in the First Circuit, certainly does require us to do so unless we are strongly persuaded that the decision is erroneous. In view of the fact that the apparatus of the claims in question has never, so far as we can find, gone into commercial use and has been limited, by a court having co-ordinate jurisdiction with this court, to apparatus described and shown, we should be very sure of our position before interpreting the claims so that they will practically dominate the art.

The question as to how far comity should control in patent causes is admirably stated by Mr. Justice Brown in Mast, Foos & Co. v. Stover Co., 177 U. S. 485; 20 Sup. Ct. 708, 44 L. Ed. 856. At page 488 of 177 U. S., at page 710 of 20 Sup. Ct. (44 L. Ed. 856), he says:

"Comity is not a rule of law, but one of practice, convenience and expediency. * * * Comity persuades; but it does not command. It declares not how a case shall be decided, but how it may with propriety be decided. * * * The obligation to follow the decisions of other courts in patent cases of course increases in proportion to the number of courts which have passed upon the question, and the concordance of opinion may have been so general as to become a controlling authority."

Applying this rule to the case in hand we are not constrained to follow the adjudication in the First Circuit, but unless convinced that the Court of Appeals was wrong we should follow its decision. In short, unless we are clearly of the opinion that the decision of the Court of Appeals of the First Circuit is erroneous, we should follow it. Especially is this true in patent causes where uniformity of decision is essential in order to prevent the most inequitable results. It is deplorable that a party should be held as an infringer for an act in New York which he may do with perfect impunity in Boston.

[2] The present appeal is not directed to the "tuning" claims, but is limited to the so-called energy of motion claims, the direct-actuation claims and the constantly-receptive claims. When Fessenden filed his application wireless telegraphy had progressed so that a sending and receiving conductor were installed for the generation and reception of electromagnetic waves. We do not understand that any new element was introduced by Fessenden in the sending station. In the receiving station a galvanometer detector is introduced consisting of the parts marked 7 and 8 on the drawing (Fig. 1) and a mirror is shown, diagramatically, as suspended between them. The receiving conductor consists of a wire or wires which are grounded, projecting vertically to a suitable height and having a coil or coils arranged in the circuit of the conductor. An element or coil or wire forming a closed circuit is supported with a freedom of movement, so that the current produced by the waves will induce a current in this element, the movements of which may be observed by means of the mirror.

The specification describes a desirable way for transforming the electromagnetic waves into recordable motion by balancing the element 8 upon supporting rods or knife edges one of which is a good electrical conductor. A carbon block is so arranged that a portion of the ring between the supporting-rods normally rest lightly thereon. When a current is produced in the coil the ring will be pressed on the carbon block thereby increasing its conductivity. Another construction is shown where the contacts arranged on opposite sides of the ring, will normally rest equally on both carbon blocks, so that an equal current will flow through both of the coils, thereby maintaining a magnetic disk suspended between the coils in equilibrium with relation thereto. The increased flow of current through one coil and decreased flow through the other coil will produce a greater movement of the magnetic disk than if only a single coil were used. The movement

of the disk can be observed by securing a mirror thereon, and in many other ways well known in the electric signaling art.

The ring element which is made of silver or other conducting material should have relatively low resistance and high self-induction. "A closed-alternating-current circuit is a circuit in which the current is relatively large for a small impressed voltage in the circuit; i. e., the circuit is one of low virtual resistance as compared with a coherer." An "unclosed circuit" is one whose virtual resistance is high. Where a current-actuated wave-responsive device is used, a closed circuit should be employed to obtain a large effective current. Where a coherer or similar device is used an open circuit should be employed. Fessenden asserts that what he has invented is, broadly speaking, as follows: He starts with the well known wireless plant and claims, in such plant, a combination having the following elements:

First.—Means located at the sending station for the generation of such waves. This concededly was old; no change in the apparatus of the sending station is claimed or suggested.

Second.—A receiving conductor at the other station. This also was old.

Third.—Means for directly translating the energy of the currents produced in the receiving conductor by the said waves into the energy of motion.

Fourth.—Means for observing or recording said motion such as a telephone or a mirror.

Invention is predicated of the last two elements.

The essential feature of the detector is the ring "whereby the energy of the electric currents produced by electromagnetic waves may be transformed into the energy of motion and energy of such motion employed for producing intelligible signals." The defendant's detectors do not have this motion. The patent says that "the circuit is one of low virtual resistance as compared with a coherer." Again, it says:

"It is also preferred that the field should consist of a coil formed of a single turn of wire 7 as shown in Figs. 2, 3 and 4, thereby reducing the resistance drop in the receiving apparatus."

The defendant does not have this low resistance contact, it uses material of high resistance such as crystal or carborundum, which could not be used in the low resistance circuit of the patent. It employs the telephone as a recording device.

There are several other differences between the patented apparatus and that used by the defendant which it is unnecessary to discuss, as they are clearly pointed out and explained in the opinions in the First Circuit. We are dealing here with a mysterious force, the phenomena of which are observable though its nature is unknown. Relying, as we must, upon the opinions of those who have made a special study of wireless telegraphy, we are forced to the conclusion that the claims in controversy are invalid in view of the prior art, but if sustained at all it must be for the precise combinations claimed and if so construed the defendant does not infringe.

We agree with Judge Hand when, in summing up the situation, he uses the following language:

· "The suit appears to me to be an effort, natural and sincere enough, to raise what was a simple, and not very useful, contrivance into a great pioneer patent. Fessenden was, indeed, the first inventor to patent commercially a directly transforming device. It so happened that the art through very different channels found other independent devices, the electrolytic, and now the crystal, detector which have superseded everything else. Hence it was natural for him to feel that he was the father of them all. He was nothing of the kind, but in this case an ingenious adapter of the ideas of others to this field."

The decree is affirmed with costs.