IRVING–PITT MFG. CO. v. BLACKWELL–WIELANDY BOOK & STATIONERY CO.

(Circuit Court of Appeals, Eighth Circuit.  December 4, 1916.)

No. 4681.   ·

1. PATENTS ⬉⟿297(2)—SUITS FOR INFRINGEMENT—EFFECT OF PRIOR DECISIONS.
    In patent causes, prior decisions of other courts are not conclusive, but, if based on substantially the same evidence, should be followed unless the second court is clearly of a different opinion.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 482; Dec. Dig. ⬉⟿297(2).]

2. PATENTS ⬉⟿22—INFRINGEMENT—EQUIVALENTS.
    The range of equivalents to which a patentee is entitled depends upon and varies with the extent and nature of the invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. ⬉⟿22.]

3. PATENTS ⬉⟿328—VALIDITY AND INFRINGEMENT—LOOSE-LEAF BINDER.
    The Pitt patent, No. 778,070, for a loose-leaf binder, in view of the prior art is entitled to a comparatively limited range of equivalents, and as so construed *held* not infringed by the binder of the Watson patent, No. 1,049,785.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by the Irving-Pitt Manufacturing Company against the Blackwell-Wielandy Book & Stationery Company. Decree for defendant, and complainant appeals. Affirmed.

Dean S. Edmonds and John C. Pennie, both of New York City (Pennie, Davis & Marvin, of New York City, on the brief), for appellant.

Bruce S. Elliott, of St. Louis, Mo., for appellee.

Before SMITH and CARLAND, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge.  The complainant, the Irving-Pitt Manufacturing Company, a corporation, is the owner of letters patent No. 778,070 granted December 20, 1904, to the Irving-Pitt Manufacturing Company of Kansas City, Mo., a copartnership, assignee of William P. Pitt for an improvement in loose-leaf books.  In Irving-Pitt Manufacturing Co. v. Twinlock Co. (McMillan Book Company, intervener) 220 Fed. 325, in the District Court for the Southern District of New York presided over by Judge Rose of Maryland, it was determined that this patent was valid.  This case was affirmed on appeal on the opinion filed below in 140 C. C. A. 603, 225 Fed. 1022.  The evidence as to the prior art was substantially the same in that case as in this one.

[1] In Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856, in speaking of the effect of such a decision under the rule of comity, it is said:

"Comity is not a rule of law, but one of practice, convenience, and expediency.  It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uni-

formity of decision, and discouraging repeated litigation of the same question. But its obligation is not imperative. If it were, the indiscreet action of one court might become a precedent, increasing in weight with each successive adjudication, until the whole country was tied down to an unsound principle. Comity persuades, but it does not command. It declares, not how a case shall be decided, but how it may with propriety be decided. It recognizes the fact that the primary duty of every court is to dispose of cases according to the law and the facts; in a word, to decide them right. In doing so, the judge is bound to determine them according to his own convictions. If he be clear in those convictions, he should follow them. It is only in cases where, in his own mind, there may be a doubt as to the soundness of his views, that comity comes in play and suggests a uniformity of ruling to avoid confusion, until a higher court has settled the law. It demands of no one that he shall abdicate his individual judgment, but only that deference shall be paid to the judgments of other co-ordinate tribunals. Clearly it applies only to questions which have been actually 'decided, and which arose under the same facts.

"The obligation to follow the decisions of other courts in patent cases, of course, increases in proportion to the number of courts which have passed upon the question, and the concordance of opinion may have been so general as to become a controlling authority. So, too, if a prior adjudication has followed a final hearing upon pleadings and proofs, especially after a protracted litigation, greater weight should be given to it than if it were made upon a motion for a preliminary injunction."

The opinion in that case by Mr. Justice Brown has been repeatedly followed in the various Circuit Courts of Appeals in the United States. It was first followed in this circuit by Judge Adams, District Judge for the Eastern District of Missouri but later a judge of this court and who recently departed this life to the great sorrow of all his associates, in New York Filter Mfg. Co. v. Jackson (C. C.) 112 Fed. 678.

It was cited by this court, though not in a patent case, in Plattner Implement Co. v. International Harvester Co., 66 C. C. A. 438, 133 Fed. 376. It was cited in a patent case in an opinion by Judge Adams speaking for this court in Torrey v. Hancock, 107 C. C. A. 79, 184 Fed. 61, 69. In Doelger v. German-American Filter Co., in the Circuit Court of Appeals for the Second Circuit, 122 C. C. A. 472, 204 Fed. 274, the court said:

"The doctrine of stare decisis applies. Though the decisions of other courts are not conclusive upon us, an orderly administration of the law requires us to follow them when based upon substantially the same facts, unless we are clearly of a different opinion."

In National Electric Signaling Co. v. Telefunken W. T. Co., in the Circuit Court of Appeals for the Second Circuit, 137 C. C. A. 353, 355, 221 Fed. 629, 631, it is said:

"Comity, though it does not compel us to follow the decision in the First circuit, certainly does require us to do so unless we are strongly persuaded that the decision is erroneous. In view of the fact that the apparatus of the claims in question has never, so far as we can find, gone into commercial use and has been limited, by a court having co-ordinate jurisdiction with this court, to apparatus described and shown, we should be very sure of our position before interpreting the claims so that they will practically dominate the art."

The Circuit Court of Appeals of the Second Circuit, in Baldwin v. Abercrombie & Fitch Co., 228 Fed. 895, 898, 143 C. C. A. 293, quoted the opinion of Mr. Justice Brown in Mast, Foos & Co. v. Stover Mfg. Co., supra, substantially as we have quoted it. It will thus be seen

that, while the decisions in the Second circuit in Irving-Pitt Mfg. Co. v. Twinlock Co. are exceedingly persuasive and would in the absence of a clear conviction upon our part be conclusive, the complainant necessarily takes those decisions subject to all the weakness shown thereby in its case. In that case the defense was invalidity of plaintiff's patent and noninfringement. Briefly stated, the plaintiff's device consists of a curved metal which assumes the ordinary shape of the back of a book and constitutes a spring. The edges of this metal are turned up and in so as to constitute a bearing or barrier. Between these bearings or barriers are inserted two plates with half hooks attached. These plates meeting each other along the entire length, the one having a V-shaped projection and the other a V-shaped depression also along its entire length forming a toggle joint. These plates extend to the bearings or barriers mentioned on the sides of the spring-back. When the toggle joint is depressed, the spring-back throws the ends of the hooks or half rings in contact thus making of them complete rings which bind the inclosed manuscripts. When the hooks are thrown apart, the toggle joint is thrown upward until it passes the center, and, to prevent it from passing up so high as to unjoint it, a cover is put down over the hooks or half rings the edges of this top plate inclosing the back or spring plate. This may or may not be close against the back or spring plate. The shape of the back or spring plate and its material is such as to bring a pressure upon the hook plates and cause the hooks to open or shut with a snap.

On the other hand, the defendant is manufacturing under the patent No. 1,049,785, issued to Richard M. Watson January 7, 1913, upon an improvement in loose-leaf binders. This is best illustrated by Figure 2 of the drawings accompanying his application which was as follows:

*Fig. 2.*

There are no plates of the character used in complainant's patent. In a curved back such as used by complainant but in the actual manufacture of less resilient metal, and there was no provision that the back should be of resilient metal, the wires indicated in the drawings forming a toggle joint at "*1*" but by reason of the form of the wires when the hooks which were an integral part of the same were pulled apart the wires expand in length simply using the back plate not as a spring but as bearings or barriers by which the wires are lengthened and so narrowed. In other words, the complainant's patent is wholly dependent upon the curved shape of the back or spring plate, and its

resiliency, while the defendant's patent does not at all depend upon either, but upon the spring character of the wires as indicated. We do not mean that with even the least resilient of metals and a curved back there would be no tendency of the back to give and return to its position after the toggle joint has passed the center, but that the Watson patent would operate in a firm case in which there was no spring to the back at all. In other words, in defendant's structure any spring that may have come from the back as previously indicated is purely incidental and not at all functional.

This brings us to the question of the rank of the complainant's patent as primary or otherwise and to how far the complainant was entitled to equivalents.

In Irving-Pitt Mfg. Co. v. Twinlock Co. (D. C.) 220 Fed. 325, Judge Rose said:

"The inventor was far from the first comer into this general field. Many patents for various forms of such books, or of devices to form a part of them, had preceded his. As under such circumstances is to be expected, the McMillan finds most or all of the separate elements of complainant's combination in the prior art. That, however, is unimportant, if in fact complainant has made a new and useful combination of some of these elements and in doing so has exercised what is (for want of a better term) called inventive genius."

Again, speaking of the tenth claim of the complainant's patent, he says:

"It is very old to fasten one thing to another by a strip of cloth. Complainant has no right to monopolize any other way of doing this than that claimed in his patent."

[2] In Paper Bag Patent Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122, the court said:

"The right view is expressed in Miller v. Eagle Mfg. Co., 151 U. S. 186, 207 [14 Sup. Ct. 310, 318 (38 L. Ed. 121)], as follows: 'The range of equivalents depends upon the extent and nature of the invention. If the invention is broad and primary in its character, the range of equivalents will be correspondingly broad, under the liberal construction which the courts give to such inventions.' And this was what was decided in Kokomo Fence Machine Case [189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689] supra, Cimiotti Unhairing Co. v. American Fur Refining Co., [198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100] supra, and Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609 [27 Sup. Ct. 307, 51 L. Ed. 645]. It is from the second of those cases, as we have seen, that the citation is made which petitioner contends the point of law upon which infringement depends is formulated; but it was said in that case: 'It is well settled that a greater degree of liberality and a wider range of equivalents are permitted where the patent is of a pioneer character than when the invention is simply an improvement, may be the last and successful step, in the art theretofore partially developed by other inventors in the same field.'

"It is manifest therefore that it was not meant to decide that only pioneer patents are entitled to invoke the doctrine of equivalents, but that it was decided that the range of equivalents depends upon and varies with the degree of invention. See Ives et al. v. Hamilton, Ex'r, 92 U. S. 426 [23 L. Ed. 494]; Hoyt v. Horne, 145 U. S. 302 [12 Sup. Ct. 922, 36 L. Ed. 713]; Deering v. Winona Harvester Works, 155 U. S. 286 [15 Sup. Ct. 118, 39 L. Ed. 153]; Walker on Patents, § 362; Robinson on Patents, § 258."

In the recent case of Moon-Hopkins Billing Machine Co. et al. v. Dalton Adding Machine Co. et al., —— C. C. A. ——, 236 Fed. 936, this court said:

"The right of a patentee to the mechanical equivalents of his structure or device is proportioned to the position of his invention in the art to which it relates. If the invention is a pioneer or primary one, his right is broad and comprehensive; if but for a slight improvement it is correspondingly narrow. Between the two extremes the measure of equivalents varies accordingly."

[3] We have examined the many patents introduced and are of the opinion that, owing to the state of the art at the time of complainant's patent, it was entitled to a comparatively limited scope of equivalents, and the defendant's book does not in this view infringe the patent of complainant, and the decree of the District Court, having been to the same effect, is affirmed.