OTIS ELEVATOR CO. et al. v. INTERBOROUGH RAPID TRANSIT CO. et al.

(Circuit Court of Appeals, Second Circuit. January 12, 1915. On Petition for Leave to Amend Decree, February 19, 1915.)

No. 110.

1. PATENTS 91—PRIORITY OF INVENTION—REDUCTION TO PRACTICE.

Evidence that, more than a year before application for a patent, a machine was built from drawings made under direction of the patentee embodying his invention, and that such machine was practically tested and sold commercially as an operative machine, is sufficient to carry the date of invention back, beyond reasonable doubt, to the date when the construction of such machine was ordered.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 121–123; Dec. Dig. 91.

Reduction of invention to practical use or operation as affecting patentability, see note to Excelsior Supply Co. v. Weed Chain Tire Grip Co., 113 C. C. A. 7.]

2. PATENTS ⚙═➤26—INVENTION—EVIDENCE TO ESTABLISH.

A new combination, producing a device well adapted for the service required, and which overcomes objections recognized for years in devices intended for the same purpose, discloses patentable invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. ⚙═➤26.]

3. PATENTS ⚙═➤328—VALIDITY AND INFRINGEMENT—AUTOMATIC MOTOR STARTER.

The Ihlder patent, No. 742,031, for an automatic motor starter, claim 3, was not anticipated and discloses patentable invention; also held infringed.

Appeal from the District Court of the United States for the Southern District of New York.

The following is the opinion of Hunt, Circuit Judge, in the lower court:

Claim 3 of the patent in suit reads as follows: "In a switch, the combination of a plurality of contacts, a plurality of contact arms provided with contacts co-operating therewith, and means for successively actuating said contact arms, said means consisting of a movable member provided with bearing surfaces of varying lengths upon which the contact arms are adapted to bear, and electro-magnetic means for actuating said member, for substantially the purposes set forth."

The patent is for an automatic motor starter, and under the principles of law applicable is to be read as for a combination of elements in an automatic motor starter. We must regard the Egger, Hall, Marvin, and Edmonds patents as disclosing certain obsolete and commercially impracticable combinations of pivoted switch levers adapted to be actuated successively by cam mechanism which was actuated in turn by electro-magnetic means in connection with devices having nothing whatever to do with motor starters. No one of these devices could be employed to regulate electric motors automatically without decided changes. Patents to Herdman, Van Emon, Whittingham, Moore, Sperry, and Knight & Potter antedate the latter part of 1900, which is the time when the Otis Elevator Company built and shipped a commercial device claimed to embody the subject-matter of the patent in suit. But I do not find that any one of these several patents discloses the combination of elements recited in the claim in issue.

[1] Baxter by certified copy shows that he filed application for patent on May 21, 1902, for a device apparently recited by claim 3 of the Ihlder patent. Ihlder did not file his application until June 10, 1902, and we may assume that Baxter was in possession of the invention of claim 3 prior to Ihlder, unless Ihlder by proof which satisfies the court beyond a reasonable doubt can carry back his date of invention further than the date of Baxter's application. But it seemed to me that Ihlder maintained the burden of proof required of him with respect to the establishment of his invention as of a date prior to October 30, 1900. It cannot be successfully disputed that upon that date an order was issued for the construction of a type of controller to be made according to a drawing previously made in accordance with the directions of Ihlder. Such a controller was completed on December 10, 1900, was connected up to a motor with electrical circuits, tested, found to be operative, and was shipped from the factory on the following day. It is proved that on December 12, 1900, this controller was shipped to San Francisco as an operative commercial mechanism. There can be no reasonable doubt that this controller, 3M No. 35, conformed in manufacture with a print of the drawing, Exhibit I, that it is shown in the photograph, Exhibit P, or that it was in all essential respects Complainant's Exhibit U. The conception of the invention of Ihlder's patent was in Ihlder before the order for the making of the controller sent to San Francisco. Construction, practical testing, and sale followed, thus proving that the date of invention was prior to October 30, 1900. Continental Rubber Works v. Tire Co., 178 Fed. 452, 101 C. C. A. 436.

⚙═➤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[3] As indicated, the patents that relate to motor starters which are to be considered in the case are therefore those of Herdman, Van Emon (two), Whittingham, Moore, Sperry, Knight & Potter, and Reichel. Ihlder discloses a series of pivot switch levers successively actuated to make butt contact with a corresponding series of fixed contact terminals by means of a cam mechanism which in turn is actuated automatically by a solenoid controlled by a dashpot. Herdman discloses an automatic controller of the pivoted arm and sliding contact type. A solenoid magnet controlled by a dashpot sweeps the arm slowly across a series of contact terminals of resistance sections. The operation is similar to that of the device disclosed by Ihlder, but may be differentiated in three important particulars: (1) Herdman shows sliding contact; (2) his device does not reproduce the action of the intelligent operator; that is, as Mr. Vansize said, it is not "fool proof"; and (3) it is not adaptable for use with large and small motors, requiring, as it does, a multiplication of subdivisions of resistance to preserve its own operation. Ihlder uses butt contacts, his device so nearly reproduces the results obtained by the skilled operator that it is practically "fool proof," and it is not at all dependent upon the number of sections of resistance. They may be large or small, as suits the motor and the work to be performed.

The Van Emon patent is of very doubtful commercial practicability because of the danger of arcing and burning, as explained in the evidence which is not necessary to be detailed in this memorandum. It is enough to say that the patent illustrates an effort to obtain in switches an action which would correspond to that of an intelligent operator; but as I understand the evidence the use of individual adjusted dashpot mechanisms is a different conception from the Ihlder patent which is explained as accomplishing by different extents of travel of a single dashpot a sequence in which the operation may take place.

The question is whether, in view of the disclosures of the patents already referred to and of the facts that switches making butt contacts were known in the electrical art, Ihlder can claim invention. In the case of Sundh Electric Co. v. Interborough Rapid Transit Co., 222 Fed. 334, decided in this district by Judge Hazel June 27, 1911. this question was discussed, the court having before it, among others, the Herdman and Van Emon patents which are of special importance to the present suit; and while the conclusion reached is not binding on this court, a reading of the opinion of Judge Hazel convinces me that the distinctions drawn by him are sound and that the end he reached was just. I shall not enter upon the matter in detail. It seems to have been considered essential that in any automatic means for starting motors it would be necessary to avoid the switching mechanisms of the wiping or sliding contact type in the use of which what is called arcing occurred and in time resulted in burning out and destroying the switch.

The witness Quimby, who has had large practical experience in the operation of automatic starters in connection with pumps operated by electricity, said that starters having the sliding contact type of switches did not prove reliable in connection with electrically operated pumps and that, after a vast experience, he in 1902 inspired the organization of the Sundh Company to get a controller which could meet his requirements. The contention of the defendants that the device of the patent in suit was produced by coupling without modification an old solenoid engine and dashpot, which could be used to run various kinds of machines and which was old in use in an automatic starter to actuate the movable arm member of a sliding contact type of switch mechanism, with another old type of switch mechanism which could be operated by hand, is not well founded. Ihlder did much more. He substituted for much of the operating mechanism of the old hand starters a different form of contact, recognized old elements, and perfected an efficient and reliable automatic starter in which he secured, by co-ordinating with a group of other switches provided with butt contacts, a solenoid and dashpot, and an intermediate cam mechanism, a device which obtained results invariably which the most intelligent operator would get.

[2] Such a new combination, producing as it did a device so well adapted for the service required of an automatic starter, and which overcame the objections which appeared, as one reads the history of the art, to have been recognized for years as inherent in automatic starters of movable arm and

sliding contact type, constitutes invention under the patent act. Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586; National Malleable Castings Co. v. Foundries Co. (C. C.) 182 Fed. 626; Eck v. Kutz (C. C.) 132 Fed. 758.

Plaintiff has sustained his allegations of infringement in that the several automatic starters which were installed for the Interborough Company in March, 1908, and which were used by that company until December, 1912, infringed the third claim of the patent in suit. Here, again, the opinion of Judge Hazel is persuasive, and his finding that there was infringement of the claim of the Sundh patent by the controllers B and C in evidence will be accepted. The Court of Appeals in this Circuit in the Sundh Case, 198 Fed. 94, 117 C. C. A. 280, refers to the devices of Sundh and Ihlder, compares them with detailed care, and affirms the view that there is infringement so far as the original controllers of the Interborough Company are concerned. Without attempting to state the mechanical points, it appears that the rotary cams in defendant's controllers in structure and in function closely correspond to the cam-shaped edges of the plate of the controller of the Ihlder patent. There is a difference in the reversal of operation, but the same differences exist as to operation between the controller of the Sundh patent and that of the Ihlder patent, and the Court of Appeals in the Sundh Case has found the substantial invention of each patent to be the same. Claim 3 of Ihlder's patent reads with the same precision upon defendant's controllers as upon the controller of Sundh.

The Interborough Company's rebuilt controller also infringes the claim in issue. The new controllers were substituted in December, 1912, after the decision of the Court of Appeals in the Sundh Case and after the bill had been filed in the present suit; but the new controllers and their electrical circuit arrangement remain as shown in the exhibit marked "E." There are certain substituted bits of mechanism, but as I understand the evidence the cam action undoubtedly is retained, and the arrangement is such as to their bearing surfaces as to produce successive movements of the switch levers. The rotary cams in the new controllers have been cut away so as to leave only the shoulders or acting faces, while the plain holding surfaces, both low and high, have been transferred to the fixed brackets. But the fact that the bearing surfaces are stationary and do not have different lengths does not substantially change the case. The means employed to actuate the switch arms in the new controllers are the mechanical equivalents of those employed in the controllers theretofore used. The Paper Bag Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122.

Mr. Waterman said, among other things: "I was asked if the operation of this pin could be said to be a cam action, and I said it could; but I have not designated it as a cam. I should say that this pin was simply a part of a cam, the rest of which was cut away, and it acts in the same manner. As the shaft is rotated the pin first makes contact on what is then its upper surface. As the shaft continues to rotate, the contact with the pin travels around the pin. It eventually gets some 100 degrees or so, maybe 120 degrees around the surface of the pin. That is the cam action. Now the mere fact that the cam is cut away is of small importance, and has no effect, from the engineering point of view, on the existence of the cam. You may cut away any part of the cam. Of course a cam is merely a sliding surface, an eccentric member which moves something. And here we have a sliding surface, eccentric member which moves something, and it is virtually a cam, although I did not myself choose to apply that term to it."

The eccentric lugs placed opposite the pins on the rotary collars, and which, after the switch arms have been moved to closed position, come up in front of the links, prevent any displacement of the latter from their seats upon the fixed brackets and make bearing surfaces of differing lengths, and it is in evidence that these lugs bear against the front of the dependent levers, the paint having been rubbed off by contact. In functional result there appears to be no difference between the setting of the eccentric pins at different angular relations with respect to the switches, and where cams are set at different relations with respect to the switches. "There is," said

Mr. Waterman, "no change in this structure, so far as its being an automatic starting switch, so far as the plurality of contacts—'the plurality of contact arms provided with contacts co-operating therewith'—are concerned. There is also means for successively actuating the contact arms."

The findings must be that the title to the Ihlder patent is as alleged in plaintiff's bill, that there has been no anticipation of the third claim of the Ihlder patent, that the claim involved invention, and that there has been infringement by defendant's first and second controllers.

Decree in favor of plaintiffs; form of decree to be submitted by plaintiffs to defendants, and thereafter to be settled by the court.

W. Clyde Jones, of Chicago, Ill., for appellants.

W. B. Whitney, of New York City, for appellees.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

PER CURIAM. The decree is affirmed, upon the opinion of Judge Hunt.

### On Petition for Leave to Amend Decree.

Petition for leave to apply to District Court to amend decree finding infringement and ordering accounting, which decree was recently affirmed by this court.

W. Clyde Jones and Arthur B. Seibold, both of Chicago, Ill., for appellants.

PER CURIAM. It was proved to the satisfaction of the District Court and of this court that the Cutler-Hammer Company had made and sold controllers like Exhibit F and that such controllers infringed the patent. Under the present decree, in the opinion of a majority of the court, complainant is entitled to profits and damages, if it can prove any, on account of all such controllers—i. e., controllers like Exhibit F—down to the accounting, whether they were sold to the Interborough Company or to anybody else. It is unnecessary to amend the decree in order to give complainant any further relief, and therefore the motion for leave to apply for amendment to the District Court is denied.