IRVING-PITT MFG. CO. v. TRUSSELL MFG. CO.

(Circuit Court of Appeals, Second Circuit.   January 9, 1917.)

No. 121.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—LOOSE LEAF BINDER.
    The Pitt patent, No. 778,070, for a loose-leaf binder, claims 1–6, dis-
close patentable invention and novelty, and in view of the pioneer
character of the device and its unquestioned utility and popularity, are
entitled to a liberal construction.  As so construed, held infringed.

Appeal from the District Court of the United States for the South-
ern District of New York.

Suit in equity by the Irving-Pitt Manufacturing Company against
the Trussell Manufacturing Company.  Decree for complainant, and
defendant appeals.  Affirmed.

This is an appeal from a decree holding that the first six claims of
the Pitt patent No. 778, 070, for improvements in loose-leaf books, are
valid and infringed.  The patent has been carefully considered by
Judge Rose in the so-called Twinlock Case, 220 Fed. 325.  His decree
was affirmed by this court upon his opinion in 225 Fed. 1022, 140 C.
C. A. 603.  The patent was also considered by the Circuit Court of Ap-
peals for the Eighth Circuit in an opinion filed December 4, 1916, 238
Fed. 177, —— C. C. A. ——, in which it was held that the claims must be
limited in scope and, as so limited, they were not infringed by the struc-
ture there in controversy.

The following is the opinion of Hough, District Judge, on final hear-
ing:

This patent has been expounded and interpreted by Rose, D. J., in Irving-
Pitt Co. v. Twinlock Co., 220 Fed. 325, and that exposition has been given
binding authority by the affirmance of the decree there rendered on Judge
Rose's opinion in 225 Fed. 1022, 140 C. C. A. 603.  It is therefore incumbent
upon me to follow absolutely the exegesis of the patent thus adopted.  This is
the more necessary because, in respect of all evidence tending to show the
state of the art or relating to possible anticipation, the record of this case is
in my opinion substantially identical with that in the Twinlock matter.

The claims in suit are the first six, and concerning them I entirely agree
with the remark of the prior decision that, if the first claim is valid and in-
fringed, the others must be similarly regarded; and I feel entitled to go fur-
ther and say that, if the first claim is neither valid nor infringed, none of the
other five in this suit can be.  For the language of the first claim, see 220
Fed. 329, and for the details of construction, Figs. 2, 3, and 4 of the patent
are so clear as to require no exposition at all.  The thought which lies at the
bottom of this patent, and without which there can never be any patentable
invention, is in my judgment the idea of controlling or arresting the move-
ment of two halves of a hinge by the operation of a piece of curved metal
flanged upon the hinge-butts and always holding the hinge as a whole under
tension.

I am wholly in accord with the finding of the ruling opinion that this was a
neat and ingenious utilization of well-known properties of matter, but ap-
plied with great skill to a branch of art where neatness, compactness, and
simplicity are greatly desired.  One way of putting it is that the back or
binder for loose leaves pictured in this patent is about as near "fool proof" as
anything of the sort that I can imagine.  It is further obviously true that the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

first claim, and every other claim in suit, consists of three elements, as stated in 220 Fed. 327, 328.

Turning to a study of the alleged infringing apparatus, there is found in all the defendant's structures introduced in evidence the spring plate or spring back which is the first element, also two hook plates which conjointly make up the second element; but the third element, i. e., the retaining plate, is in the ordinary sense conspicuously absent, and herein rests the whole defense to this suit, which may be summed up in the proposition that the defendants are using two elements out of a combination of three, and no more, and this they have a right to do. No one denies this doctrine of law. When the patent is studied, it is to me wholly plain that the third element is described in each one of the claims in suit only in the following language: "Means for reliably holding the hook plates and the spring plate together;" and further is it evident that the only reliable means known to or suggested by the patentee for such holding together are all comprised in the third element of his invention, viz. the retaining plate. He says so in so many words in the eighth claim (not in suit); also in the specification, where he mentions the retaining plate "which holds the hook plates and spring plate together." And again he says that the movement of the hook plates upwardly "is limited by contact with the underside of a retaining plate." And finally he describes his apparatus in the following words, viz. that the "interlocking edges of the hook plates contact with the retaining plate * * * where they are reliably held."

The most casual observation of the patent figures above referred to, and of any device manufactured in accordance with the revelations of the patent, shows that the retaining plate is the only thing that keeps the entire apparatus from flying apart when the hinge formed by the tongue and groove construction of the two hook plates is moved upwardly. Obviously, therefore, since the defendant admits using two elements of the patentee's invention, it must substitute something for that reliable holding which the patentee affords by means of his retaining plate. Such substitute is plainly shown by the subjoined diagram:

—which exhibits substantially the same contrivance as is shown in a subsequent patent to Trussell (whose name sufficiently indicates his connection with defendant), No. 1,141,157, and also in another subsequent patent to the suing patentee (with the same assignment), viz. Pitt, 806,913.

Very brief inspection of these diagrams shows that the function of the retaining plate of the patent in suit has been transferred to the hook plates, and that the method of "reliably holding the hook plates and the spring plate together" is no longer (as in the patent) by putting an external stopper on the action of the hinge, but by making a hinge that will jam when it is bent to a predetermined angle. The same thing can be done and the same result achieved by the tongue and groove construction of the plaintiff; but it is plainly not the intent of this patent to do anything of the kind, for, if it were, the unanswerable question suggests itself, Why put on any retaining plate? In short, if I were left to my own construction of this patent, as compared with the defendant's devices, I should be strongly of opinion that defendant arrived at the same result, and for the same purpose as that sought and achieved by the patentee, it did it by a different method, and is therefore within the law.

But I find myself unable to transform this opinion into a decree, because I can perceive no defense open to this defendant that was not more than suggested—indeed, most obvious in respect of the McMillan apparatus, which was the infringing article in the Twinlock Case. That binder has a hinge of a far

more usual and easily recognizable variety than are the tongue and groove or slot and lug constructions of the plaintiff and defendant here. Reduced to its lowest terms, the Twinlock or McMillan infringement is the skeletonized part of Fig. 1 of McMillan, 857,254, and it may be studied also in the subjoined diagram:

McMillan shows a covering plate which at first glance answers to the retaining plate of the patent in suit, but it has no function except to hold in place the C-springs, ringed upon the hinge pintle which runs through the two halves of the ring binders. That construction was held in the ruling case to be an infringement because the three wires were the mechanical equivalent of Pitt's hook plates, and so they obviously were, and the C-springs did not furnish all the power which made the device operative—a part of it came from the spring plate, or what McMillan called a back plate—and this also was obviously true. I cannot discover where or how the third element in Pitt's construction was or can be discovered in the McMillan construction. This is not because McMillan does not show a covering plate, which looks like a retaining plate, but because that plate in McMillan performs no function at all in relation to or coaction with the other two elements of Pitt's device which do exist in McMillan; whereas in Pitt there is that coaction and co-ordinate operation with a new result, which is the true test of a mechanical combination.

Yet the appellate court has held, for the reasons given by this court, that McMillan infringed. Take off McMillan's covering plate and throw it away, and the device will operate just as well without it. The C-springs are an unnecessary addition; the covering plate was only useful to disguise the rawness and cover the rough edges of the machinery. The defendant, with mechanical skill, has smoothed these rough edges and made a presentable and workable device, which looks well enough to dispense with a covering plate, and does not need any retaining plate because there is nothing to retain. McMillan needed a covering plate to cover his rough mechanical parts; he only wanted a retaining plate for his useless and superfluous springs.

In short, in my opinion, the identity in mechanical construction, operation, and result between McMillan and Trussell is absolute, and there is no reason discoverable by me why, if the first man infringed, the second does not also. If the plaintiff in the Twinlock Case was entitled to a decree, the same plaintiff is entitled to a like decree here. Yet to me it seems plain that neither McMillan nor Trussell has used more than two out of the three elements of Pitt's combination. Probably I am wrong about this, but I cannot arrive at any other result. Nevertheless I cannot feel it right to stop defendant's business, if reasonable security is given, until after an opportunity has been afforded to ask the Circuit Court of Appeals for what I think is practically a reargument of the Twinlock matter.

Plaintiff may take the usual decree on the six claims in suit, but the injunction will be lifted until the Circuit Court of Appeals has spoken, if an appeal is taken within 30 days and security given in the sum of $10,000. There will be no accounting, if this security is given, until after mandate comes down from the higher court.

Fraser, Turk & Myers, of New York City (Arthur C. Fraser and Henry M. Turk, both of New York City, of counsel), for appellant.

Pennie, Davis & Marvin, of New York City (John C. Pennie and Dean S. Edmonds, both of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The Pitt patent in issue has been so frequently before the court and has been so thoroughly examined by the judges who have passed upon its validity and scope that further discussion along these lines seems superfluous. We indorsed the opinion of Judge Rose in the Twinlock Case and see no reason to justify us in receding from the position there taken. Nothing has occurred to change our opinion that the exposition of the law as stated by Judges Rose and Hough follows as a necessary conclusion from the facts.

The claims in controversy are the first six. The District Court considered the first claim as typical of the others. This claim contains three elements; the first two are found in the defendant's structure and the controversy turns upon the question whether or not the third element—the retaining plate—is present. This element is described in the first claim as "means for reliably holding the book-plates and the spring plate together." This "means" is referred to in the testimony as the "retaining plate." The question, therefore, narrows itself down to this. Does the defendant have the retaining plate or an equivalent thereof? We think it does.

There is nothing in the patent itself or in the evidence requiring a restricted interpretation of the claims and, in view of the unquestioned popularity and utility of the Pitt device, we do not see why the claims should be so limited. Pitt was practically the originator of this art. It was in a crude and nebulous condition before he appeared. In short, we find nothing which requires us to reverse our former decision affirming Judge Rose. The complainant acting under the Pitt patents is practically the creator of this art and is entitled to a liberal construction of the claims in controversy. As so construed the defendant infringes.

The decree is affirmed with costs.