### JACKSON CUSHION SPRING CO. v. ADLER et al.

(Circuit Court of Appeals, Sixth Circuit. May 18, 1917.)

No. 2782.

1. PATENTS ⊗==328—VALIDITY AND INFRINGEMENT.
    The Adler and Sullivan patent, No. 991,187, for a spring cushion for the seats and backs of automobiles, conceding its validity, is of narrow scope, its range of equivalents small, and its practical utility doubtful, and, as so construed, *held* not infringed.

2. PATENTS ⊗==61—SCOPE—PRIOR ART.
    A patent the application for which was filed prior to that for the patent in suit is prima facie a part of the prior art, and may be considered in the limitations it imposes on the scope of the patent in suit.

⊗==For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by Theodore L. A. Adler and William G. Sullivan against the Jackson Cushion Spring Company. Decree for complainants, and defendant appeals. Reversed.

Edw. N. Pagelsen, of Detroit, Mich., for appellant.

Stuart C. Barnes, of Detroit, Mich., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge. [1] The controversy in this case relates to the portion of springs in automobile backs which supports the shoulder, neck, and head of automobile occupants. The lower court concluded that the defendant (appellant here) had infringed claims 1 and 6 of the plaintiffs' (appellees') patent No. 991,187, issued May 2, 1911, on their application filed November 24, 1909. The defendant appealed. The claims in question are shown in the margin.[1]

In upholstering the top portion of automobile seat backs, it had been usual to attach to the rigid trimming rail at the top of the back a rather expensive roll of hair in a duck or canvas casing. The leather back was then fitted over such roll. The roll, not having the same yielding quality as the back springs, frequently matted, sagged downward, and became unpleasant to the seat occupant. The patentees' purpose was to obviate these objectionable features by providing a spring edge at the top of the seat back which would yield uniformly with the adjacent portion of the back springs and maintain the contour of the upholstery and the comfort of the occupant. Incidentally it was claimed on the hearing that economy in the use of hair is effected. To accomplish their purpose they employed helical springs arranged in

[1] 1. In combination with a supporting frame, a helical spring rising therefrom and adapted to oscillate along its helical axis, an arched spring uniting the support and the free end of the helical spring, the arch extending beyond the edge of the supporting frame and forming a support for an upholstering cover extending from the plane of the top of the helical spring around the edge of the frame, and a pair of connecting and bracing members extending from the curved portion of said arch spring to corresponding portions of similar adjacent springs, one of said members being resilient and the other being relatively rigid, substantially as described.

6. A spring seat, having in combination with a supporting frame and a row of helical springs attached at one end of each to portions of said frame appreciably spaced from the edge thereof, a corresponding number of arched springs, one for each of the row of helical springs, and attached at their tops to the top portion thereof, said arched springs extending convolutely therefrom over and outside of the edge of the frame, with their base portions engaging there against, a relatively rigid connecting bar extending parallel to the edge of the frame and attached to the lower arched portion of each of said last-named springs, and a resilient connecting member extending parallel to said bar and to the edge of the frame, being attached to the upper arched portion of each of said last-named springs, whereby a strain imposed on any one of said arched springs is yieldingly communicated to the other springs and yieldingly opposed accordingly, substantially as described.

series, held together by tie wires, and fastened either directly to the seat back or to a supporting metal frame placed against such back. The row of helical springs near the top of the back projects horizontally and is necessarily placed some distance from the top edge of the seat. Extending upward and rearward from the top of each side of each helical spring is an arm, which, at the highest point of its arch and over the top of the seat back or trimming rail, is formed into a downwardly projecting convolute coil. The two arms are formed from a continuous wire which is so bent, where it reaches the top of the seat back, as to lie horizontally on it for the support of the spring thereon and its convenient attachment thereto. One arch arm may, if preferred, be used instead of two. To preserve the parallel relation between the arms, two classes of cross-stays are used. The stay of the first class, which is resilient and nearer the helical springs, is hooked around the arms, and, to permit it to yield under strain, may have eyelets or convolute curves between them. Springs of this class, instead of being of the character just mentioned, may assume the helical form of greater resiliency. The stay of the second class is affixed to the arched arms at or about their highest point, above the convolute coil, and some distance from their attachment to the frame, and is of sufficient rigidity to transmit from one spring to another any lengthwise strains imposed upon it. It is not contemplated that the stay shall remain stationary. The patentees assert that their arched springs with their connecting stay members constitute an edge cushioning structure, any of whose members will yield to a strain directly imposed on it, and that the extent of the yielding is reduced from what it would otherwise be by the pull of the two stays which transmit some of the strain to the immediately adjacent arched spring members and a lesser amount to those further from the point of greatest strain. The yielding character of the resilient stay, which is located where the greatest strain occurs, causes a less pull on the arched springs than does the relatively unyielding stay. The result is that with but little upholstery "the top edge, against which the user's body rests, is rendered most yielding and soft." They also claim that their mode of construction of edge springs allows them to retain their proper position, keeps the upper portion of the seat back cushion in proper shape, and greatly increases the action and efficiency of the adjacent cushion springs, to which they are united, by relieving them from the direct pressure and downward weight of the upholstery and that in consequence a lighter and softer wire may be used with an increased possibility of forming a very soft and elastic back.

[2] Young, to accomplish the same purpose as plaintiffs, filed an application on November 1, 1909, which is shown in the record, and obtained a patent, No. 1,155,391, on October 5, 1915, for upholstering a seat back. The patent issued subsequent to the date of the decree in the lower court. At the top of the seat back, where the frame is attached to it, is what he terms a border wire running lengthwise of the back. At the top of the outer edge of the topmost series of helical springs is another border wire. Extending convolutely from one of

these border wires to the other are spring arches. On each side of the coil flat metallic strips or stays arranged horizontally and parallel with the top of the seat back rest upon and are fastened to the arches or curved arms to tie them together and to support the hair stuffing. The top of his seat back spring differs from plaintiffs', in that his stays are not wire, but metal strips, are apparently of the same size, and are differently located on the arched springs, which do not, like plaintiffs', extend rearwardly beyond the trimming rail, and his convolute coil is in front of and above, but not over, such rail. It is obvious that if the seat back were turned about so that the top edge of the trimming rail would be in the same position as the front edge of the seat, the spring construction adopted by plaintiffs and by Young respectively would answer quite as well for the front of the seat as for the top of its back. The awkward phraseology in the descriptive portion of plaintiffs' patent is doubtless due to the effort to make it applicable to a seat cushion as well as to the top of a seat back. Claim 5 in the plaintiffs' patent, one of their broadest claims, and claim 8, of the Young patent, are both for an edge spring for a cushion seat, and are both couched in precisely the same language. An interference was declared November 12, 1912, and decided in Young's favor, which decision, no appeal from it having been taken, remains in full force. We are not unmindful that the claim of plaintiff's patent, put in interference, is not the same as either of the claims in suit, but it is clear that Young's device responds quite as well as plaintiff's to their claim 5, and that although Young's spring arrangement has not been adjudicated to anticipate that of plaintiffs as to the limited claims which alone are now in issue, the priority of the invention as to his entire device presumed from the earlier filing of his application (Electric Controller & S. Co. v. Westinghouse E. & Mfg. Co., 171 Fed. 83, 87, 96 C. C. A. 187 [C. C. A. 6] makes Young's patent a part of the prior art, and, as his invention was conceived and reduced to practice as an entirety, it may be thus considered in the limitations it imposes on the scope of the plaintiffs' invention. The prior art, as disclosed by the record, shows that spring edges for spring seats and kindred structures, convolute coils, arched springs, stays or connectors of various designs, resilient and nonresilient, or of varying degrees of resiliency, were old in the art before plaintiffs began their experimenting. Their patent is a narrow one, and its range of equivalents small. This further appears from a consideration of the Schultz & Sweeney patent, issued August 1, 1911, on their application of March 30th preceding, in accordance with which patent, except as to one added member hereafter to be mentioned, the defendant as a licensee operated. The normally flat ribbons of resilient wire bent into sinuous curves, employed by Schultz & Sweeney, are joined at their lower ends at the topmost row of helical springs, to downward connecting rods, from which connecting points they are bent or arched upward beyond the top of the seat back and then downward and forward that their ends may be fastened to the upper horizontal bar of the metal frame, which bar is attached to the top of the wooden seat back or to its top front portion. Their arched top

springs do not in cross section differ materially in appearance from plaintiffs', excepting that they have no convolute coils. Unlike plaintiffs', they are made of sinuous or wavy instead of round wires, and are connected not by two continuous resilient wire stays, one of which is more resilient than the other, but by two or more rows of resilient wire coiled springs, all of which are above and beyond the helical springs and are not a part of a continuous wire, but are separate and distinct, each extending from one sinuous or wavy arch to the next adjoining only. The added member in defendant's commercialized form of such device, to which member allusion above is made, was inserted at the suggestion of defendant's principal customer, and consists of a thin flat metal strip or bar about one and one-half inches wide, placed vertically and edgewise at or near the rear top edge of the wooden frame of the seat back. Its upper edge is bent over toward the front into an imperfect roll. The wavy arched spring wires are held to its rear side by clips, and pass downward and forward under such bar, their ends being fastened to the upper horizontal metal strip of the spring-supporting frame, although they might be fastened, it would seem, to the front edge of the top of the wooden frame, if the manufacturer should choose so to do.

The plaintiffs' patent must have issued on account of the restrictions placed on their combination of their connecting stays with the arched springs and the offices thereby performed. Plaintiffs' relatively rigid stay is susceptible of much motion, laterally, vertically, and rearwardly. This freedom of movement is attainable only by its location upon the arched springs at a distance from the rigid framework of the seat back. Were it located at or on such framework, it would not be free to move endwise to perform its function of transmitting from one spring to another any lengthwise strains imposed upon it, nor would it move readily forward or rearward, if at all. The portion of the arches extending between the framework and the stay yields with the residue of such arches when pressure is applied to such stay. The yielding and soft qualities of the plaintiffs' spring construction are so pronounced as to cause its rejection by manufacturers because it is not strong enough to maintain and hold in position the hair stuffing, and, if made strong enough to do that, is lacking in resiliency. The weight of the evidence would seem to indicate its impracticability as a working device, if constructed within the terms of the patent. Its construction, moreover, requires expensive machinery. The defendant's added strip or bar is not the equivalent of the relatively rigid connecting stay shown in the patent in suit. It is differently located and does not perform the same, or substantially the same, function or operate in a similar manner. It is so near the top of the seat back and the point at which the ends of the arches are attached, and is so rigid in itself and so firmly held by the numerous wires passing over and around it and attached to the metal frame as to render it incapable of any motion, even before the upholstering is done, which appreciably affects the arched springs, and, after the stuffing and leather cover are adjusted, the application of a considerable force fails per-

ceptibly to move the stay endwise, rearward, forward, or downward. The frictional contact of an occupant's back with the leather covering can produce no noticeable impression on such stay or bar, and such member consequently performs no function in transmitting from one spring to another any lengthwise strains. An essential feature of plaintiffs' spring construction—a feature on which they lay much stress—is therefore wanting in defendant's device. The defendant's arches are not convolutely extended, and in reality terminate at the top of the metal strip or stay which serves substantially the same purpose as an extension upward of the top of the seat back. If such metal strip may be likened to plaintiffs' relatively rigid stay, it must then be conceded that defendant's device is devoid of all arched spring construction between such stay and the trimming rail, and that the transmission of lengthwise strains resides in the resilient coiled spring stay alone. The defendant's structure is commercially operative and successful, and has gone into extensive use. It differs materially from the plaintiffs' in the result attained and the means of attaining it. Conceding the validity of the patent in suit, but considering its place in the art and its questionable utility, to give it a broad construction would operate to discourage rather than promote inventive talent. Infringement is not made out, and the judgment of the trial court is therefore reversed.

A discussion of the charge of piracy from the Young and the Schultz & Sweeney inventions so freely made against the plaintiffs is unnecessary. In view of the conclusions reached, defendant's motion to remand to take additional evidence is denied.

An order may be taken in accordance with the foregoing.