## TROY LAUNDRY MACHINERY CO., Limited, v. INTERNATIONAL EQUIPMENT CO.

(Circuit Court of Appeals, First Circuit. February 2, 1922.)

No. 1520.

**1. Patents ⬨328—1,213,999, for drying apparatus, held void for lack of invention.**

The Balzer patent, No. 1,213,999, for a drying apparatus, the only novel feature of which is a screen for removing lint from recirculating air and means of access for cleaning the same, in view of the fact that screens were used in the prior art at the outlet for removing lint from the air before its discharge, *held* void for lack of invention.

**2. Patents ⬨310(7)—Pleading in infringement suits.**

In pleading defenses in a suit for infringement, the distinction should be carefully observed between the pleading of patents and printed publications, which, as disclosures, take effect only from the date of issue, and allegations of priority of invention, in which actual dates of invention are to be the subject of testimony, and, under an answer pleading a patent as a prior disclosure, evidence of the date of the application for such patent is not admissible to establish prior invention.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by the Troy Laundry Machinery Company, Limited, against the International Equipment Company, doing business as the Empire Laundry Machinery Company. Decree for defendant, and complainant appeals. Affirmed.

George L. Wilkinson, of Chicago, Ill. (Charles D. Woodberry and Roberts, Roberts & Cushman, all of Boston, Mass., on the brief), for appellant.

George N. Goddard, of Boston, Mass., for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. This is an appeal from the decree of the District Court dismissing a bill for infringement of claims 2 and 12 of letters patent to F. Balzer, No. 1,213,999, January 30, 1917 (on application filed April 27, 1914), for drying apparatus. The claims in suit are as follows:

"2. In a drying tumbler, the combination, with a casing, of a rotary foraminous cylinder in said casing, heating coils, a blower for circulating air

⬨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

around the heating coils and through the cylinder, a screen through which the air passes before being drawn through the blower, and means for permitting access to said screen to clean the same."

"12. In a drying tumbler, the combination, with a casing, of a rotary cylinder in the casing, a heating chamber, a blower for circulating air through the heating chamber and cylinder, means for eliminating the lint from the air after it passes through the cylinder and before it enters the blower, said casing having a restricted air inlet for maintaining the required volume of air in circulation in the casing, and a restricted outlet for permitting the escape of surplus air from the casing."

[1] "A restricted air inlet for maintaining the required volume of air in circulation in the casing, and a restricted outlet for permitting the escape of surplus air," refers only to a feature common to drying machines having a casing. Inlets and outlets are ordinarily "restricted," and a description of them by this term does not involve means for regulating inflow and outflow. A damper or other device for controlling outlets to maintain them closed until a predetermined pressure has been obtained in the casing sufficient to open the outlets is not involved in the claims in suit, but is a feature which is a special element of claims 13 and 14, which are not in suit. Means for keeping substantially the same volume of air in continuous circulation are not, therefore, an element in either of the claims in suit.

The combinations of claims 2 and 12 seem to differ from combinations in the prior art only in the feature described in claim 2 in the words, "A screen through which the air passes before being drawn through the blower, and means for permitting access to said screen to clean the same," and in claim 12, "Means for eliminating the lint from the air after it passes through the cylinder and before it enters the blower."

The prior art discloses drying apparatus in which heated air is recirculated in the dryer. It is stated that in the prior art there are two types of drying tumblers—the fresh air type, in which the air that was passed through the cylinder is wholly discharged into the atmosphere; and the recirculating type, in which part of the moisture-laden air is returned to the heating coils to reheat and again enter the cylinder. In each type there was produced more or less lint, due to rubbing against the rough cylinder surface. In the fresh air type of machine the discharge passage was screened to prevent the discharge of lint into the outer air; in the device of the patent in suit a screen is used to collect the lint from heated air which is to be recirculated, instead of from the air which is to be discharged. In claim 2 is a reference to "means for permitting access to said screen to clean the same."

The substantial question in the case is whether it involved invention to provide a screen so located as to eliminate lint from the recirculating heated air. The recirculating type of machine was already in the art, and the problem was merely how to remove objectionable lint from a machine that already had been invented. Balzer's solution of this problem was the provision of a screen accessible for cleaning it from accumulated lint. Instead of locating the screen at the outlet, as in the fresh air type of dryer, it was located at a point in the path of the recirculating air.

The removal of lint by screening the air passage was old in this art. Whether the air passage is direct from inlet to outlet, or circular, a screen is an equally efficient means of cleansing the air.

We think this quite analogous to the screening against the intake or discharge of dust, which is a common feature of shop practice.

[2] The patents to Raymond, No. 1,091,706, March 31, 1914, and Spencer, No. 849,581, April 9, 1907, disclose recirculating drying machines in which the heated air may be used repeatedly, and we think are sufficient to limit the claims in suit to the feature of the accessible screen, without consideration of the defense based upon Balzer's application record in the Patent Office, and regardless of the admissibility under the pleadings of the Binder patent No. 1,136,645, issued April 20, 1915, on application filed January 21, 1914. The plaintiff appellant objects to this patent as evidence of prior invention, the objection being based upon the pleadings. By answer it was set up "that the alleged improvements  *  *  *  claimed in the letters patent in suit had been patented or described prior to said Balzer alleged invention  *   *   * in the following patents and printed publications," among them No. 1,136,645, Binder, April 20, 1915. Binder's issue date was prior to the issue date of the patent in suit. In rebuttal the plaintiff offered a certified copy of Balzer's application, which showed the application date April 27, 1914, a date prior to Binder's date of issue.

It appears by the record that the defendant filed an interrogatory:

"Will plaintiff set up, or attempt to prove in this suit, a date of invention by Fritz Balzer, the patentee, and the plaintiff's assignor, of the subject-matter of the patent claim sued on earlier than April 27, 1914, the alleged filing date of the application on which was issued the patent in suit?"

To which the plaintiff answered:

"Not unless the defendant pleads other defenses than those set up in its answer filed in this cause."

The plaintiff contends that it has overcome the patent to Binder as a prior patent, and that it is entitled to rely upon Balzer's application date of April 27, 1914. The defendant in turn seeks to rely upon Binder's application date, which is January 21, 1914. The plaintiff contends that it had the right to rely upon defendant's failure to either plead or prove that Binder had prior knowledge of the thing patented, relying upon section 4920, R. S. (Comp. St. § 9466), Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68, and many other cases which it cites in support of its contention. The defendant appellee argues that it may rely upon Binder's application date as prima facie evidence that Binder was the inventor at the date of filing. It cites Lemley v. Dobson-Evans Co., 243 Fed. 391, 397, 156 C. C. A. 171, and other cases.

We are not informed by the opinion whether this point was raised before the District Court. Had it been, an application for amendment of the answer to set up Binder as a prior inventor, instead of a prior patentee, would doubtless have removed all occasion for a technical controversy over the sufficiency of the pleadings to authorize the introduction of the Binder patent as evidence of a prior invention, dating from the application date rather than a mere patent or publication dating from its date of issue.

We are of the opinion that in pleading defenses the distinction should be carefully observed between the pleading of patents and printed publications which, as disclosures, take effect only from the date of issue, and allegations of priority of invention in which actual dates of invention are to be the subject of testimony. As in answer to the defendant's interrogatory the plaintiff had asserted that it would not set up for Balzer, under the present state of the pleadings, an earlier date than April 27, 1914, the plaintiff seems technically right in its contention that it was not called upon to anticipate Binder's application date of January 21, 1914, but only Binder's date of issue.

While the Binder patent was offered as defendant's exhibit without objection, its relevancy was limited and controlled by the pleadings and the position taken on interrogatories, and we do not regard it as proof of prior invention.

It seems to be true that recirculation of the air would involve the carrying of successive accumulations of lint, unless it were intercepted after each passage of the air through the cylinder, and that the accumulation of lint within the machine might result in objectionable deposits.

While means of disposing of superfluous lint are not specifically shown in the recirculating machines of the prior art, we think that the addition of a screen to an existing and operative combination does not entitle Balzer to deprive prior inventors of the right to use the well-known expedient of a screen to obviate an incidental defect like that arising from the production of lint or dust. It is common experience that after an operative machine is installed there is produced an undesirable amount of dust or lint. The machine is still operative, and, considered as a mechanical organization or patentable combination, needs no change. The problem of dealing with excessive dust or lint, or the prevention of clogging or obstruction by foreign matter, then becomes a separate and special problem of limited scope. It did not require the invention of a drying machine to solve the problem of removing lint from a drying machine already invented, nor the invention of a means of removing lint, since a screen at the outlet was an efficient device for that purpose.

Instead of screening the air after it had passed through the cylinder on its way to the outlet, Balzer screened the air after it had passed through the cylinder and while on its way to the blower. We are of the opinion that the addition of this screen to the existing combination did not amount to invention of a patentable combination, nor entitle Balzer to claims for patentable combinations. See Scott & Williams, Inc., v. Hemphill Mfg. Co. (D. C.) 247 Fed. 540, 542, 543, on appeal (C. C. A.) 262 Fed. 968.

The decree of the District Court is affirmed, with costs to the appellee in this court.