SCOTT & WILLIAMS, Inc., v. HEMPHILL MFG. CO.

(District Court, D. Rhode Island.   December 29, 1917.)

1. PATENTS ⬦➟328—VALIDITY AND INFRINGEMENT—KNITTING MACHINE.

The Wardwell patent, No. 649,021, for a knitting machine, claims 29, 30, 31, 32, and 36, relate rather to details of machine building than to any novel inventive idea peculiar to knitting machines, and if they can be sustained as valid it is only by limiting them to the particular construction shown; as so limited, *held* not infringed.

2. PATENTS ⬦➟17—CONSTRUCTION—DISCRIMINATION BETWEEN CLAIMS—INVENTION OR MECHANICAL SKILL.

Claims in a patent for a knitting machine, which relate to the general organization of knitting machines, involving principles of operation peculiar to such machines, must be carefully distinguished from those claims which relate to details of machine building, even though the latter contain the words "in a knitting machine." This is not enough to take a detail of mechanical improvement out of the general mechanical art of machine construction, and, if this improved detail of construction is one within the knowledge and practice of mechanics, it does not matter that it was made by one who was also the inventor of new combinations, which he may justly claim as inventions.

In Equity.   Suit by Scott & Williams, Incorporated, against the Hemphill Manufacturing Company.   On final hearing.   Decree for defendant.

Howson & Howson, of New York City, for plaintiff.

Wilmarth H. Thurston, of Providence, R. I., for defendant.

BROWN, District Judge.   Infringement is charged of claims 29, 30, 31, 32, and 36 of patent No. 649,021, May 8, 1900, to C. J. A. Wardwell, for improvements in knitting machines.

[1] The specification is a long document, of 26 pages, with 13 sheets of drawings.   There are 42 claims, directed to many details of the mechanism of a knitting machine which automatically knits a string of completely knitted stockings, each having a seamless heel and seamless toe, a foot and a leg.

Machines of this type are old.   The foot and leg are knit in circular courses, or by round and round knitting, and the heel and toe are knit by reciprocating movements for narrowing and widening operations, which require the throwing of the needles in and out of action.

After describing the general character and mode of operation of the machine the patentee says:

"All of the foregoing results, which are accomplished by a machine embodying the present improvements, have heretofore been accomplished by automatic 'whole stocking' knitting machines; and the present invention consists in improved mechanism for achieving these results," etc.

⬦➟For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The claims in suit relate to improvements in that part of the mechanism which moves a cam shaft that bears the cams whereby the changes in knitting are effected.

While any one kind of knitting is going on, the cam shaft stands still. When a change in the kind of knitting is to be made, the cam shaft is actuated, bringing a cam into position and into action to effect the change. The movement is produced by the engagement of a pawl with the teeth of a ratchet wheel firmly attached to the cam shaft. When the pawl is held out of engagement with the ratchet, the cam shaft is still. The pawl is brought into and thrown out of engagement, and the movements of the cam shaft thus controlled, through a pattern mechanism, which commonly makes one complete cycle of movement to the knitting of a complete stocking.

The common type of pattern mechanism comprises a chain carried by a sprocket wheel, which is advanced step by step by a ratchet and pawl. The greater number of the links of the chain are alike, and do no work. At suitable intervals links of special form are provided, which, when they arrive at the predetermined position, actuate the cam shaft, and thus the cams, through proper connections, effect the knitting changes. The character of the product to be knitted determines the position of the special actuating links upon the pattern chain. The number of courses of a particular kind of knitting desired before a change determines the number of nonactuating links before the introduction of the special actuating link.

The actuating link is followed by more inactive links corresponding to the number of courses before the next change; then follows a special link, and so on.

Claim 29 is typical:

"29. A knitting machine organized so as to knit in circular and reciprocating courses and to produce stockings having seamless heels and toes, said machine having, in combination, a time shaft which moves from time to time and by intervening mechanism controls the variations in the knitting, said time shaft being given from time to time an intermittent step by step motion and a movement through a greater extent than that of its usual steps; and automatic means controlled by a pattern mechanism for moving said time shaft, substantially as set forth."

The special feature of these claims is set forth in the words:

"Said time shaft being given from time to time an intermittent step by step motion and a movement through a greater extent than that of its usual steps."

The novelty is said to be long strokes which are employed to effect all of the changes in the knitting; short strokes which are employed as feeding movements, and also when the speed is changed.

The specification states the advantages resulting from the longer strokes—

"and to render the cam rise gradual and its action smooth and easy the ratchet $G$ is moved through a large arc, which in the illustrated machine is seven times the length of the arc through which it moves in taking its usual step."

It is the contention of the defendant that it will be obvious to any one having knowledge of mechanics that the more gradual the incline on a

cam the easier the action of said cam will be, and that when the incline of a cam is made more gradual the length of movement of such cam and of the cam shaft to which it is secured must be correspondingly increased.

In view of what is conceded in the specification as to the results attained by previous machines, it would seem to follow that the cams upon their cam shafts must have been of sufficiently gradual incline to permit of successful operation, and that the time of their operation was sufficient for effecting the knitting changes. The thought of using a cam necessarily implies an incline sufficient for operation and time sufficient for operation upon the parts which it actuates, and the use of a cam shaft also necessarily implies movements to bring the cam into operative position.

The plaintiff's brief refers to no evidence to show that former machines were in these respects defective.

If it be true, as plaintiff contends, that the prior art shows only uniform step by step movements of the cam shaft, it would seem to follow that such movements were adequate for practical operation. The plaintiff's brief does not, as is usual, point out some practical defect in the prior devices which was remedied by the patented device; nor is there anything in the plaintiff's case to show important practical results not previously attained, or to show the solution of any general problem peculiar to the art of knitting stockings by machinery. There is nothing to show that the changes in the movements of the shaft required any reorganization of the knitting machine considered as an entirety.

So far as has been made to appear, the provision of cams with gradual incline and easy action, and giving to the cam shaft movements appropriate in length for the cams thereon, and also proper feeding movements to bring the cams into operating position, involved only a special and limited mechanical problem, relating to a mechanical detail of construction, rather than any problem which properly can be considered to relate to the general organization of automatic knitting machinery. It is a problem of a machine builder, rather than a problem of a knitting machine inventor.

It is the opinion of Mr. Livermore, defendant's expert, that:

"It is merely a matter of mechanical judgment to proportion the length of movement in accordance with the work to be done in a given moment and this might vary according to the character of the cams on the cam shaft and the mechanical connections therefrom to the parts which have to be moved," etc.

The plaintiff contends that the prior art shows no disclosure of the idea of giving to the time shaft of a rotary knitting machine long movements (longer than the ordinary step by step feed movements) to effect the variations in the knitting, and that this gives a greater length of time within which to effect these changes, and yet all within the limits of the revolution of the knitting head, and the further advantage of greater certainty in timing the operation of the different variation producing means.

As we have already said, it is essential that a cam shaft should always move sufficiently for the operation of cams. If movements of this

length are not desirable for the feeding movements, it would seem to involve only mechanical skill to shorten them.

As appears by the testimony in this case and by decisions which have been cited, there is an extensive prior art of automatic knitting machines provided with cam shafts. A claim for operating a cam shaft, with short movements for feeding or positioning and longer movements for cam action, would be a very broad claim, which would exclude knitting machine builders from what is conceded to be an old mechanical motion. Thus in Wyman's patent, No. 364,696, there is disclosed a mechanical motion device for giving short and long movements to a shaft under control of a pattern mechanism, which plaintiff admits is the equivalent of that used by Wardwell. It is used, however, in a machine of a different type; i. e., a "drop-box loom," so called. If lengthening the cams takes too much of the arc of a circle to admit of movements of equal length for the feed, it would seem to be open to machine builders, called upon to improve a machine only in respect to ease of cam action, to use what was already known in the general art of machine construction in any type of machine where it was desired to accomplish this limited purpose. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856. Mechanics who have only general mechanical skill, and who have had no part in the invention of the general organization of a machine, are called upon to remedy defects in details of construction, or to make, by application of their mechanical skill, improvements in the mechanical construction and operation of parts. For example: A mechanic who prevents overrotation of a numeral wheel in a counting machine by means of a stop does not invent a counting machine, even though he was first to use a positive stop in a counting machine. Felt & Tarrant Mfg. Co. v. Mechanical Accountant Co. (C. C.) 129 Fed. 386; W. C. Robinson et al. v. Tubular Woven Fabric Co., 248 Fed. 526, opinion of this court March 31, 1917.

[2] In a patent like that before us, claims which relate to the general organization of a knitting machine, involving principles of operation peculiar to knitting machines, must be carefully distinguished from those claims which relate to details of machine building, and such claims must be distinguished, even though they all contain the words "in a knitting machine." This is not enough to take a detail of mechanical improvement out of the general mechanical art of machine construction. If this improved detail of construction is one within the knowledge and practice of mechanics, it does not matter that it was made by one who was also inventor of new combinations which he is justly entitled to claim as inventions For what he does merely as a mechanic he stands exactly as other mechanics.

The defendant's expert testifies that the result of giving the cam shaft a greater length of movement at some steps than at others, and specifically a greater length of movement in the steps in which the cams perform their work than in those by which the cam shaft is stepped around to proper position for the cams to perform their work for the next step, is obtained in the construction shown in the Williams patent, No. 571,191, and in the Rowe patent, No. 570,059—both

automatic knitting machine patents. In the Williams patent occurs the following language:

"The object of using the disk 45 with its coarse teeth is to permit of the use of the high cam 43, for one movement of the cam disk must carry the pin 39 from the bottom to the top of this cam, and if the extent of each movement of the cam disk was only equal to one of the fine teeth of the ratchet wheel 44, the face of the high cam 43 would be so abrupt that it would not lift the pin. By the use of the coarse-toothed disk 45, however, I am enabled to impart such an extended movement to the cam disk when the cam 43 is brought into action that the inclined face of the cam can be of such an angle as to easily raise the pin 39."

This seems to disclose the idea of giving to the cam a greater extent of movement in order to enable the action of said cam to be made easier, by making the incline thereon more gradual, and also means for carrying the idea into effect, to wit, longer teeth on the ratchet wheel which moves said cam.

Mr. Livermore also states that in the constructions shown in the Williams patent and the Rowe patent the differences in length of movement of the cam shaft are obtained by having some of the teeth of the ratchet longer than the others, so that the pawl gives a greater step movement when acting on a long tooth than when acting on a short tooth.

The plaintiff points out, however, important differences in construction and operation between those devices and that of the patent in suit. But it is not necessary to deal with these in detail; for we find in the present case what seems to be an unjustified assumption that an old mechanical motion adapted to give long and short movements for the purposes of cam action, and of feeding cams to position, may be claimed exclusively for him who first used it in a machine for the automatic knitting of stockings. As there is no evidence in the case that in doing this the patentee solved any other problem than that of easing the cam action and of providing movements of the shaft appropriate thereto, and to feeding, the question of infringement cannot be determined by a showing that the defendant also, even though later, provided means for operating his cam shaft in the same way.

The plaintiff, in my opinion, is not entitled to claim broadly all mechanism for imparting different lengths of movement to the cam shaft of an automatic knitting machine for the purpose of easing cam action and providing suitable feed movements. The defendant's device cannot be held an infringement merely because its cam shaft has movements corresponding to those of plaintiff's machine. The claims must be construed in connection with the specification, and limited to a combination in which the described movements of the cam shaft are effected by means substantially similar to those described in the plaintiff's specification. It must further appear that the means so described involve patentable invention. If limited to the specific structure disclosed by Wardwell for giving the movements to the cam shaft, and if the comparison upon the question of infringement is to be, not of movements produced, but of the means whereby plaintiff and defendant respectively produce its movements, I am of the opinion that there is no infringement.

Wardwell's mechanism for giving to the cam shaft movements of different length is thus described by Mr. Arthur S. Browne, plaintiff's expert:

"As already pointed out, at intervals, the 'time shaft' is moved through a greater extent than at other times, this longer movement or stroke being important to enable easy movements to be accomplished by means of cams having gradual inclines. I will describe the mechanism of the Wardwell patent for doing this.

"During the ordinary running of the machine the pawl lever $F$ (Fig. 16) has a short movement only, being limited in its movement by a stop *54*, which is encountered by a detent or arm *56* on the pawl lever $F$ when the said pawl lever is pulled inwardly by the springs *49* and *50*. The upper end of the pawl lever $F$ is always moved the same distance to the right (Fig. 16) by the pin *51* as the reciprocating rack $E$ rises, but the movement of the pawl lever in the opposite direction under the influence of the springs *49* and *50* is determined by the location of the stop *54*. When that stop *54* is in the path of the detent *56* of the pawl lever $F$ (as shown in Fig. 16), then the pawl lever has a limited extent of movement. The stop *54*, however, is capable of being lifted upwardly out of the way of the detent *56*, and when so moved the pawl lever $F$ can be moved much farther inwardly by the pull of the springs *49* and *50* and until an outwardly extending projection *65* on the pawl lever $F$ encounters the uplifted stop *54*. Hence, when the stop *54* is uplifted, the pawl lever and its pawls *48* and *61* have a longer stroke than when the stop *54* is in its lower position; and if, at a time when the pawl lever makes a long stroke, its pawl *61* is down in its ratchet-engaging position (as the result of the pattern chain action and that of the lifter *60*) the ratchet wheel $G$ and the 'time shaft' *40* will be moved to a correspondingly greater extent.

"As described in the Wardwell patent, the stop *54* is made of elastic metal, so as to be capable of being raised and lowered, and it is lifted automatically at the desired times by means of cams *63* on the face of the ratchet wheel $G$. Only one of these cams *63* is shown in Fig. 16, but several are employed, as stated, at page 5, lines 56 to 61, and as indicated in Fig. 2. The stop *54* has a 'tongue' *64*, which depends into the path of cam *63*. Accordingly, when one of these cams *63* encounters the tongue *64*, the stop *54* is automatically lifted, thus permitting pawl *61* to make its long stroke."

Wardwell's pattern chain has no control of the length of movement of the actuating ratchet and cam shaft, but this is controlled by the position of cam *63* upon the actuating ratchet; a feature peculiar to Wardwell's construction.

In the defendant's device the movement of the pawl is of uniform length; but the length of movement given to the actuating ratchet, and thus to the cam shaft, is determined by a variedly movable pawl controller, the position of which is determined by the special character of links on the pattern chain. The pawl controller is a lifter governed by the links of the chain which, in one position, while certain links are passing, supports the pawl out of the reach of the teeth, and thus renders it inoperative, but in another position, when the proper links come into action, permits the pawl to reach the teeth and thus become operative to turn the ratchet and time shaft, the operation of which stops when the lifter is again moved to turn the pawl away from the ratchet wheel.

In the defendant's machine the pattern chain controls the pawl controller, and thus the engagement of the ratchet. The specific construction of the defendant's means for controlling the movements of the

shaft is closer to that of devices of the prior art than to Wardwell's, and is not, in any proper sense, a copy of Wardwell's construction.

The plaintiff contends that:

"The whole question of these differences between the Wardwell variable stroke motion and the defendant's variable stroke motion is completely disposed of by the fact that defendant's form as a mechanical motion (beginning with the varying size of lugs on the pattern) is shown to be old, in the Wyman patent, 364,696, and therefore made the equivalent of Wardwell's by the knowledge of the art of mechanical motions, and Mr. Livermore says they are substantially the same mechanical motions."

Being of the opinion that the defendant has the right to make the narrow mechanical improvement of easing the cam action and of providing feeding steps of shorter length than those appropriate for the cams, by the employment of known devices for that purpose, and that this would not involve invention, I am also of the opinion that the claims 29 to 32, inclusive, cannot be held valid simply because Wardwell may have been first to employ a mechanical equivalent of Wyman's mechanical motion to move the cam shaft of a knitting machine, but that these claims, if valid, must be limited to the structure disclosed in Wardwell's specification, and that, so limited, they are not infringed.

Claim 36 omits the long movement which forms an essential feature of claims 29 to 32. Claim 36 is as follows:

"A knitting machine having, in combination, a time shaft; a ratchet loose on said shaft; a chain wheel movable with said ratchet; a pattern chain engaging said chain wheel; a ratchet wheel fast to the time shaft; a pawl engaging said loose ratchet wheel to impart a step by step movement to said pattern chain; a pawl engaging said fast ratchet to give a step by step movement to the time shaft; a lifter engaging said fast ratchet pawl to normally hold it out of co-operation with said fast ratchet and adapted to drop when a variation in the pattern chain co-operates therewith, thereby permitting said pawl to engage its fast ratchet wheel, substantially as set forth."

The particular feature which is said to characterize this combination, and to distinguish it from prior art combinations, is:

"A lifter engaging said fast ratchet pawl to normally hold it out of co-operation with said fast ratchet and adapted to drop when a variation in the pattern chain co-operates therewith, thereby permitting said pawl to engage its fast ratchet wheel."

Prior means of rendering the actuating pawl inoperative, except when it was desired to move the cam shaft, comprised the provision of longer teeth on the ratchet, so that the constantly moving pawl was unable to reach the next tooth, but played idly against it until, by action of the pattern chain, it was able to reach the next short tooth on the pattern chain, and thus continue to actuate the ratchet until a long tooth was again encountered, which caused the pawl to idle until again brought in action by a link on the pattern chain whereby it was enabled to engage the tooth beyond the long tooth. This form of pawl controller is shown in the patents to Burleigh, 537,802; Stewart, 529,509; Williams & Swinglehurst, 552,806; Rowe, 570,057—in all of which the action of the pawl for turning the actuating ratchet and cam shaft is arrested by the pawl coming to one of the long teeth and merely traveling back and forth on the long tooth without turning the cam

shaft until, by the action of the pattern chain, the pawl is enabled to reach the next tooth. By these constructions the pawl at suitable times is made inoperative and operative.

In McMichael and Wildman, No. 508,965, the pawl R of the actuating ratchet K has a lateral extension on the working end of the pawl, as shown in Fig. 5. This extension overlies the chain wheel J and is in position to engage the links of the pattern chain J' as they pass along beneath said extension.

The greater part of the pattern chain is made up of high links, which, as they pass beneath the extension of the pawl R, lift said pawl out of reach of the teeth of the actuating ratchet and render the pawl inoperative. When a low link arrives under the pawl, it is no longer supported, but drops into engagement with the teeth of the ratchet, and becomes operative. The function of the lateral extension of the pawl R is that of a pawl lifter. That it is attached to the pawl itself, instead of being supported independently of the pawl, seems to be a formal difference, not affecting the fact that it is a distinct element, with the distinct function of lifting the pawl in co-operation with the pattern chain, and of permitting it to drop into engagement with the ratchet teeth upon the arrival of the low link.

Mr. Browne, plaintiff's expert, says of this device:

"The pawl R is controlled directly by the links of the pattern chain."

But the lateral extension of the pawl is designed to co-operate with the chain, and, even though made integral with the pawl, it must be regarded as a distinct element, which is a pawl lifter under control of the pattern chain.

Upon the whole case it may be said that the claims in suit relate rather to details of machine building than to any novel inventive idea peculiar to knitting machines. If they can be sustained as valid, it is only by limiting them to the particular constructions shown; and, so limited, they are not infringed.

In view of the conclusion on the merits, it is unnecessary to consider the defense of laches.

The bill will be dismissed.